JUDGE NATHAN

14 CV 5055


RECEIVED
JUL 0 7 2014
U.S.D.C. S.D.N.Y.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RICHEMONT NORTH AMERICA, INC., and CARTIER, a division of RICHEMONT NORTH AMERICA, INC., <br><br> Plaintiffs, <br><br> v. <br><br> MELISSA PORDY, <br><br> Defendant. | Case No. _____ <br><br> JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiffs Richemont North America, Inc. ("Richemont") and Cartier, a division of Richemont North America, Inc. ("Cartier") (collectively, the "Plaintiffs"), by and through their attorneys Morgan, Lewis & Bockius LLP, alleges the following for its complaint against Melissa Pordy ("Defendant"):

### NATURE OF ACTION

1. Defendant is a former employee of Richemont, working in its Cartier division.

2. Plaintiffs bring this action seeking injunctive relief and damages arising out of Defendant's breaches of her contractual and other obligations to Plaintiffs and her various tortious acts.

3. Defendant, until her termination on April 25, 2014, was Director of Off-Line Advertising for Cartier. On information and belief, prior to her termination, Defendant initiated efforts to misappropriate confidential information and trade secrets ("Confidential Information") of Plaintiffs and to induce another Richemont employee working in the Cartier division ("Jane Doe") to resign – efforts Defendant continued following her termination.

4. In addition, since her termination, Plaintiffs has taken unlawful possession of Plaintiffs' property through, upon information and belief, fraudulent means.

5. Through her actions, Defendant has breached her employment obligations to Plaintiffs breached the duty of loyalty and the fiduciary duty she owes to Plaintiffs, and violated various statutory and common laws.

## THE PARTIES

6. Richemont is a Delaware corporation having its principal place of business at 645 Fifth Avenue, New York, New York 10022.

7. Cartier is a division of Richemont.

8. Upon information and belief, Defendant is a resident of Manhattan, New York, residing at 360 East 72nd Street, New York, New York 10021. From approximately October 2008 through April 2014, Defendant was employed by Richemont in the Cartier division, working out of Richemont's Manhattan Headquarters located on Fifth Avenue.

## JURISDICTION AND VENUE

9. This Court has jurisdiction pursuant to 28 U.S.C. § 1331, as Plaintiffs' claim pursuant to the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030 *et seq.*, arises under a law of the United States.

10. This Court has supplemental jurisdiction over the asserted state law claims pursuant to 28 U.S.C. § 1367 because they are related to the CFAA claim in that they form part of the same case or controversy.

11. Venue is proper in this Court, because a substantial part of the events or omissions giving rise to the claims occurred, and Defendant resides, in this District. Venue is also proper pursuant to the Confidential Information and Non-Solicitation Agreement (the "Agreement") entered into

by and between Defendant and Richemont, through which the Parties waived any objection to the laying of venue in the United States District Court for the Southern District of New York.

## FACTUAL BACKGROUND

### Defendant's Employment

12.   In October 2008, Richemont hired Defendant as Assistant Vice President for Cartier in its Advertising Department.

13.   Cartier is one of the preeminent symbols of luxury in the World. Cartier's origins and the CARTIER brand date back more than 150 years, when Louis Francois Cartier, master jeweler to Europe's royalty, founded the House of Cartier and established his jewelry business in Paris, France. In 1874, Alfred Cartier took over the company from his father, and later, Alfred Cartier's three sons Louis, Pierre and Jacques turned the family business into a global empire. Since then, Cartier has become a stylistic and commercial leader in fine jewelry, watches and other luxury goods.

14.   Cartier's leadership in the field of watches, fine jewelry, and luxury goods design has caused the CARTIER brand to be regarded as one of the preeminent symbols of cosmopolitan fashion, quality and luxury.

15.   Effective April 1, 2011, Defendant became the Director of Off-Line Advertising for Cartier.

16.   In her role, Defendant was responsible for procuring advertising exposure for the CARTIER brand through, *inter alia*, newspaper and magazine advertisements, television commercials, product placement, sponsorships, and billboards. For example, Defendant may have negotiated an agreement with a major newspaper through which Cartier would receive a full page advertisement once a month on the back cover of the paper's Sunday edition.

17. In her role, Defendant was exposed and had access to confidential information regarding Plaintiffs' products, marketing and media strategies and plans, advertising budgets, and company initiatives. In addition, Defendant was exposed to confidential information concerning Plaintiffs and their clients, vendors, advertising and marketing partners, and employees.

18. Throughout her employment with Richemont, Defendant was provided access to and had use of one of Plaintiffs' computers for performing her job duties and responsibilities.

19. Defendant used the computer assigned to her in interstate and/or foreign communications and in facilitating, promoting, and conducting interstate and foreign commerce on behalf of Plaintiffs.

### The Terms and Conditions of Defendant's Agreement

20. Defendant entered into the Agreement with Richemont on or about October 27, 2008.

21. The Agreement contains protections and rules governing Confidential Information.

22. In signing the Agreement, Defendant expressly affirmed in writing that she acknowledged and agreed that:

   a. During her employment, she would come into contact with, have access to and learn and use various forms of Confidential Information, which is the property of Richemont, including, but not limited to: (i) financial and business information, such as information with respect to markets, strategies and plans for future business, and new marketing ideas; (ii) marketing information, such as marketing plans, procedures, and strategies; and (iii) personnel information regarding other employees;

   b. Richemont is engaged in a highly competitive business and that its competitive position depends upon its ability to maintain the confidentiality of the Confidential Information;

   c. Any disclosure, divulging, revelation or use of any of the Confidential Information, other than in connection with Richemont's business or as specifically authorized by Richemont, would be highly detrimental to Richemont;

   d. In the event she separated from Richemont, she would not directly or indirectly use, disclose or disseminate to any other person, organization or entity or otherwise use any Confidential Information; and

  e. Immediately upon separation from employment, she would return: (i) any and all documents, files or materials reflecting any Confidential Information or otherwise relating to Richemont's business; (ii) lists of Richemont's customers or leads or referrals to prospective customers; and (iii) any computer equipment, home office equipment, telephone, automobile, or other business equipment belonging to Richemont.

23. Defendant further acknowledged and agreed that any solicitation, luring away or hiring of Plaintiffs' employees would be highly detrimental to Plaintiffs' business. Defendant agreed that both during her employment and for a period of one year thereafter, she would not, either on her own account or on behalf of any other person or entity, solicit the hiring of any of Plaintiffs' employees, or cause or endeavor to cause any such employee to leave employment with Plaintiffs.

24. Defendant's contractual obligations to Plaintiffs' continue beyond her employment with Richemont.

### Defendant Understood and Agreed to Comply With Richemont's Employee Handbook and Standards of Business Conduct

25. During her employment, Defendant received copies of Richemont's Employee Handbook (the "Handbook") and Standards of Business Conduct (the "Standards").

26. In November 2012, Plaintiffs provided copies of the Handbook and the Standards to all Richemont employees, along with a form that acknowledged the receipt of those documents (the "Employee Acknowledgment Form").

27. Defendant understood and expressly affirmed in writing that it was her responsibility to read the Handbook and the Standards and comply with the policies, procedures and standards contained in both and any revisions made thereto, by signing the Employee Acknowledgment Form.

28. Defendant also understood and expressly affirmed that she received and understood her obligations with respect to those policies, and that she would comply with them, including that

she had a responsibility to protect Plaintiffs' Confidential Information, including after her separation from the company. She further acknowledged and understood that all of Plaintiffs' property and Confidential Information must be returned to the company upon her separation from employment.

29. Defendant further understood and expressly affirmed that:

   a. She would not use any confidential information for her own pecuniary advantage;

   b. Any computer, files, e-mail or software ("Richemont's Information Systems") furnished to her were property of Richemont and intended for business use only;

   c. She was not authorized to use Richemont's Information Systems for personal gain or any illegal or unethical use;

   d. Under no circumstances was she authorized to access any of Richemont's Information Systems for the purpose of obtaining Richemont's Confidential Information for a competitor of Richemont, emailing Confidential Information to the Employee at a personal email address or to a third party for purposes other than furthering the business objectives of Richemont; and

   e. She would not download or place any confidential information on removable media (such as USB thumb drives, a CD Rom, or disk) or personal mobile devices.

### Defendant's Employment is Terminated

30. On or about March 28, 2014, Defendant was informed that her position was being eliminated as part of a reorganization of Cartier's Advertising Department. At that time Defendant was informed that she would continue to be an employee through June 30, 2014 and that her responsibilities would be limited to transitioning her work.

31. On or about April 17, 2014, though target bonuses were not to be paid until the end of May 2014, Plaintiffs notified Defendant that she would receive her target bonus on April 24, 2014. Thereafter, Defendant received that target bonus in the amount of $32,800, less applicable deductions, on or around April 24, 2014.

32. On April 25, 2014, Plaintiffs notified Defendant that her employment was being terminated effective immediately.

33. Upon information and belief, prior to April 25, 2014, Defendant commenced efforts to obtain alternate employment, including interviewing for Advertising positions with Tiffany & Co. ("Tiffany") on or about April 8, 2014.

34. Tiffany holds itself out as the World's "premier jeweler and America's house of design."

35. Tiffany is a direct competitor of Cartier and Richemont.

36. Following her termination, Defendant joined Tiffany in its Manhattan corporate offices.

### Defendant Solicits Jane Doe To Join A Competitor

37. Upon information and belief, from March 28, 2014 through Defendant's last day of employment on April 25, 2014, Defendant, while still employed by Richemont, planned and took steps to access, procure and use Plaintiffs' Confidential Information. Those efforts included enlisting the services of Jane Doe to download Confidential Information contained on Defendant's computer and Plaintiffs' network. During this same time, Defendant solicited Jane Doe by offering her alternate employment.

38. Upon information and belief, Defendant's efforts to access, procure and use Plaintiffs' Confidential Information and to solicit Jane Doe continued after Defendant's termination.

39. At the time of Defendant's termination, Jane Doe was an Assistant Manager of Offline Advertising for Cartier reporting to Defendant. Jane Doe had previously served as Defendant's Assistant and reported to Defendant throughout her employment with Richemont.

40. On or about October 26, 2010, Jane Doe executed a Confidential Information and Non-Solicitation Agreement with Richemont, which contained identical provisions to Defendant's Agreement.

41.    On or about November 8, 2012, Jane Doe executed the Employee Acknowledgment Form.

42.    Upon information and belief, Defendant solicited Jane Doe to leave Richemont following Defendant learning that her position was being eliminated on March 28, 2014.

43.    Upon information and belief, on or about April 1, 2014, Defendant provided Jane Doe with nine USB thumb drives (emblazoned with the emblem of Gyro – upon information and belief, Gyro is Defendant's husband's employer) and instructed Jane Doe to back up Defendant's computer and download Plaintiffs' Confidential Information, including files pertaining to Cartier's Offline Advertising plans, proposals and strategies. Thereafter, Defendant informed Jane Doe that Defendant was leaving Richemont and that the Confidential Information would be used "if we need them sometime." Accordingly, Jane Doe began downloading files per Defendant's request, including presentations, documents and spreadsheets containing Plaintiffs' Confidential Information regarding contacts, strategic plans and priorities, spend analyses and budgets.

44.    Upon information and belief, Defendant accessed and procured Plaintiffs' Confidential Information between March 28, 2014 and April 25, 2014 for purposes other than furthering Plaintiffs' business objectives and/or for purposes that were not authorized by Plaintiffs.

45.    Upon information and belief, Defendant intended to use Plaintiffs' Confidential Information for her own pecuniary gain and to unfairly compete with Plaintiffs in the event she procured employment with a competitor.

46.    Upon information and belief, throughout the month of April, Defendant repeatedly asked Jane Doe when the downloading of Plaintiffs' Confidential Information to the thumb drives

would be complete and attempted to schedule a meeting with Jane Doe to retrieve the Confidential Information.

47. Upon information and belief, prior to her termination from Richemont, Defendant was offered and accepted a position at Tiffany, at which time she solicited Jane Doe to join her at Tiffany.

48. Upon information and belief, as a result of Defendant's solicitation, on or about April 28, 2014, Jane Doe interviewed for a position with Tiffany. Thereafter, Jane Doe was offered a position at Tiffany on May 5, 2014 and verbally accepted the position on or about May 9, 2014. During that time, Defendant continued to pressure Jane Doe to complete the requested download of Plaintiffs' Confidential Information.

49. On May 12, 2014, Jane Doe submitted a letter of resignation and notified Plaintiffs that she had received an offer from an undisclosed competitor of Cartier.

50. On or about May 15, 2014, Jane Doe rescinded her resignation and notified a colleague of Defendant's request that Jane Doe download files. Upon information and belief, Defendant became irate over Jane Doe's decision and demanded that Jane Doe provide her with the USB thumb drives containing Plaintiffs' Confidential Information.

51. On May 22, 2014, Jane Doe tendered her resignation and is no longer employed by Richemont.

52. Upon information and belief, following her termination, Defendant has contacted Plaintiffs' advertising and marketing partners and demanded that advertising opportunities she negotiated on behalf of Plaintiffs be transferred to her new employer.

### Defendant Impersonates a Richemont Employee to Take Control of Richemont Property

53.     When Defendant was hired by Richemont, she was provided a company cell phone, which was assigned a company-owned telephone number provided by AT&T.

54.     Plaintiffs provide cellular telephones to certain employees as a business tool to assist employees in communicating with management and other employees, their clients, associates and others with whom they may conduct business.

55.     The costs and expenses associated with the phone service and Defendant's use of the company cell phone and company-owned telephone number were paid for by Richemont. Defendant had no authority to cancel, assign, or forward the company-owned telephone number.

56.     Following her termination, Defendant requested that she be provided her personal contacts from her company cell phone and that the company-owned telephone number be released and transferred to her personal cell phone.

57.     On April 30, 2014, Richemont's IT Administrative Assistant received a phone call from an individual professing to be a member of Richemont's Human Resources Department who requested that the company-owned telephone number be released to Defendant. Accordingly, per procedure, the IT Administrative Assistant contacted AT&T and requested the release.

58.     Defendant later notified Plaintiffs that Richemont did not need to release the company-owned telephone number, as it had already been released and transferred to her personal cell phone.

59.     During a subsequent investigation into the release, Plaintiffs discovered that the April 30 call was made from a blocked number belonging to a landline registered to "Pordy M" at 520 East 72nd Street, New York, NY 10021.

60. Upon information and belief, Defendant called the IT Administrative Assistant, impersonated a member of Richemont's Human Resources Department, and "approved" the release of the company-owned telephone number to her personal cell phone.

61. As a result of Defendant's improper actions, the company-owned telephone number is no longer owned by Richemont.

62. As Defendant is now in possession of Richemont's company-owned telephone number, Plaintiffs' customers, employees, vendors, and advertising and marketing partners who are unaware of Defendant's separation from Richemont will continue to reach Defendant when dialing the company-owned telephone number. As a result, a media seller checking on the status of Plaintiffs' upcoming television advertisement or seeking to negotiate a new agreement will be contacting an individual working for Plaintiffs' competitor.

### **Defendant Failed To Return Unearned Wages**

63. On or about June 26, 2014, Plaintiffs learned that, due to a clerical error, Defendant: (a) continued to receive her salary through at least June 5, 2014; and (b) received a target bonus that was duplicative of the accelerated target bonus she received on April 24, 2014. Following all applicable tax withholdings and deductions, those payments totaled $28,889.02 in unearned wages received by Defendant.

64. Upon learning of the clerical error, Plaintiffs stopped all further erroneous payments to Defendant. Plaintiffs also notified Defendant of these erroneous payments on July 1, 2014 and requested that Defendant immediately return of all such monies. To date, Defendant has failed to return the unearned payments.

## COUNT I
### (Breach of Contract)

65. Plaintiffs incorporate by reference each of the foregoing paragraphs of their Complaint as if the same were set forth fully herein.

66. At all relevant times, Defendant was bound by, among other things, the terms of her Agreement, the Handbook, and the Standards, and the obligations arising out of her employment, to maintain and protect Plaintiffs' Confidential Information. Those obligations prevent Defendant from using any Confidential Information for personal gain, including any attempt to further her own interests through the improper and unlawful use of Plaintiffs' Confidential Information. These obligations further prevent Defendant from downloading or placing any confidential information on removable media, such as USB thumb drives, or personal mobile devices.

67. Despite these obligations, upon information and belief, Defendant misappropriated such information, and attempted to induce another to do the same for Defendant's gain, in violation of, among other things, the terms of Defendant's Agreement and the obligations arising out of her employment arrangement.

68. At all relevant times, including after her termination, Defendant was bound by her Agreement to refrain from soliciting, luring away or hiring any of Plaintiffs' employees with whom Defendant worked, or causing or attempting to cause any such employee to leave employment with Plaintiffs.

69. Upon information and belief, both during and after her employment with Richemont, Defendant solicited Jane Doe to join her at a competitor.

70. As a direct and proximate result of Defendant's breaches of her Agreement, the Handbook and the Standards, and her obligations arising out of them, Plaintiffs are at risk of

losing valuable advertising relationships and opportunities and lost a valuable member of Cartier's Advertising Department, and have thus suffered irreparable harm and unquantifiable business losses.

71. Plaintiffs have been damaged and continue to be damaged as a result of Defendant's actions and are therefore entitled to compensatory damages in an amount to be determined at trial.

## COUNT II
### (Breach of Fiduciary Duty)

72. Plaintiffs incorporate by reference each of the foregoing paragraphs of their Complaint as if the same were set forth fully herein.

73. At all relevant times, Defendant owed a fiduciary duty to Plaintiffs to act with the utmost good faith and loyalty in the performance of her duties. This obligation required her to use her best efforts on behalf of Plaintiffs to act in their best interests and to refrain from any activity that would damage Plaintiffs' interests.

74. Defendant held a position with Plaintiffs of trust and confidence, through which she was given access to Plaintiffs' Confidential Information, which she was and is duty-bound to protect and not to disclose.

75. At all relevant times, Defendant was aware of her duty not to disclose Plaintiffs' Confidential Information, and knew that her use or disclosure of such Confidential Information would constitute a violation of her duty.

76. Defendant knowingly breached the duties that she owed to Plaintiffs by retaining and using Plaintiffs' Confidential Information and attempting to procure additional Confidential Information in conjunction with her prohibited solicitation of Jane Doe.

77. Upon information and belief, Defendant has been and is using Plaintiffs' Confidential Information to induce Plaintiffs' advertising and marketing partners to discontinue and/or alter their relationships with Plaintiffs and sell Plaintiffs' advertising spots to a competitor through improper and unlawful means.

78. As a direct and proximate result of Defendant's breach of fiduciary duty, Plaintiffs are at risk of losing valuable advertising relationships and opportunities, has lost a valuable member of Cartier's Advertising Department, and have suffered irreparable harm and unquantifiable business losses.

79. Plaintiffs have been damaged and continue to be damaged as a result of Defendant's actions and are therefore entitled to compensatory damages in an amount to be determined at trial.

80. Defendant's wrongful actions were willful and deliberate and were done in complete disregard for the highest standards of fiduciary conduct. Accordingly, an award of punitive damages is warranted and would serve to deter her and others from engaging in such conduct.

## COUNT III
### (Breach of Duty of Loyalty)

81. Plaintiffs incorporate by reference each of the foregoing paragraphs of their Complaint as if the same were set forth fully herein.

82. Defendant owed Plaintiffs a duty of loyalty not to take any actions contrary to Plaintiffs' best interests while still in Richemont's employ. In addition, she continues to owe a duty to Plaintiffs not to use or disclose Plaintiffs' Confidential Information or solicit Plaintiffs' employees with whom Defendant was in contact during her employment with Richemont.

83. Defendant breached her duty of loyalty to Plaintiffs by taking actions contrary to Plaintiffs' interest while she was employed. Additionally, Defendant has breached her duty of

loyalty by accessing, procuring and using Plaintiffs' Confidential Information for her own benefit and by soliciting Jane Doe to separate from her employment with Richemont.

84. Defendant's acts are unlawful and are being committed in furtherance of an unlawful objective, in deliberate disregard of the known rights of Plaintiffs.

85. As a direct and proximate result of Defendant's breach, Plaintiffs are at risk of losing valuable advertising relationships and opportunities, have lost a valuable member of Cartier's Advertising Department, and have suffered irreparable harm and unquantifiable business losses.

86. Plaintiffs have been damaged and continue to be damaged as a result of Defendant's actions and are therefore entitled to compensatory damages in an amount to be determined at trial.

87. As Defendant breached her duty of loyalty, she is disentitled to her compensation during the period of her disloyalty pursuant to the Faithless Servant doctrine.

88. Defendant's wrongful actions were done in disregard of the duty of loyalty owed by her. Accordingly, an award of punitive damages is warranted and would serve to deter her and others from engaging in such conduct.

## COUNT IV
### (Violation of Computer Fraud and Abuse Act)

89. Plaintiffs incorporate by reference each of the foregoing paragraphs of their Complaint as if the same were set forth fully herein.

90. Defendant induced Jane Doe to access a protected computer without authorization and in a manner that exceeded Jane Doe's authorized access to obtain Confidential Information in violation of CFAA.

91. Defendant committed and attempted to commit these acts to a protected computer that was used in interstate and/or foreign commerce or communications.

92. Defendant's conduct injured Plaintiffs' protected computer, operations, business, and Confidential Information, and caused a loss to Plaintiffs in excess of $5,000.00 within a one-year period.

93. Plaintiffs' losses from the intentional damage caused by Defendant include the cost of responding to the offense; conducting a damage assessment; attempting to restore the data, program, system, and/or information to its condition prior to the offense; costs incurred; and other consequential damages.

94. Plaintiffs have been damaged and continue to be damaged as a result of Defendant's actions and are therefore entitled to compensatory damages in an amount to be determined at trial.

## COUNT V
### (Tortious Interference with Contractual Relations)

95. Plaintiffs incorporate by reference each of the foregoing paragraphs of their Complaint as if the same were set forth fully herein.

96. Defendant knew that Jane Doe had a contractual relationship with Richemont, and obligations relating to her employment arrangement with Plaintiffs, including those set forth in the Handbook and the Standards, that included provisions precluding the misuse and disclosure of Confidential Information. Despite Defendant's actual knowledge of this agreement and these obligations, Defendant, on information and belief, intentionally encouraged Jane Doe to breach her employment provisions with Plaintiffs by accessing and misusing Confidential Information.

97. Defendant, therefore, on information and belief, intentionally, knowingly, and improperly induced Jane Doe to breach her contractual obligations to Plaintiffs in a coordinated and concerted effort to obtain Plaintiffs' Confidential Information in order to compete unfairly with Plaintiffs.

98. Defendant thereby wrongfully interfered with Plaintiffs' contractual rights, causing Defendant unquantifiable damages.

99. Plaintiffs have been damaged and continue to be damaged as a result of Defendant's actions and are therefore entitled to compensatory damages in an amount to be determined at trial.

100. Defendant's wrongful actions were willful and deliberate and in disregard of Plaintiffs' contractual relationship with Jane Doe. Accordingly, an award of punitive damages is warranted and would serve to deter Defendant and others from engaging in such conduct.

## COUNT VI
### (Conversion)

101. Plaintiffs incorporate by reference each of the foregoing paragraphs of their Complaint as if the same were set forth fully herein.

102. At all relevant times, Plaintiffs were in rightful and peaceable possession of their Confidential Information and the company-owned cell phone number.

103. By gathering and misusing Plaintiffs' Confidential Information and Richemont's company-owned cell phone number for her own personal gain, Defendant has misappropriated and will inevitably continue to misappropriate Plaintiffs' Confidential Information and property to the detriment, and in violation, of Plaintiffs' right to exclusive possession of such information and property.

104. Defendant's improper assumption and inevitable dominion and control over Plaintiffs' Confidential Information and property has interfered and will continue to interfere with and diminish Plaintiffs' rights to, and will impair the quality of, that Confidential Information and property.

105. Plaintiffs have lost the exclusive right of possession to their Confidential Information and property, including Richemont's company-owned phone number, and Defendant can use such Confidential Information and property to her advantage in ways that may cause Plaintiffs to have to expend significant money and resources to defend themselves.

106. The foregoing constitutes unlawful conversion of Plaintiffs' property.

107. As a direct and proximate result of Defendant's actions, Plaintiffs have been and continue to be damaged and are therefore entitled to compensatory damages in an amount to be determined at trial.

## COUNT VII
### (Fraud)

108. Plaintiffs incorporate by reference each of the foregoing paragraphs of their Complaint as if the same were set forth fully herein.

109. Upon information and belief, in order to obtain the company-owned cell phone number for her own use, Defendant misrepresented herself as a member of Richemont's Human Resources Department to Richemont's IT Administrative Assistant with the intent to deceive that individual.

110. Relying on Defendant's misrepresentation, the IT Administrative Assistant contacted AT&T to release the company-owned cell phone number and transfer it to Defendant's personal cell phone.

111. As a direct and proximate result of Defendant's misrepresentation, Richemont has lost the exclusive right of possession to its property. Moreover, Defendant can use such property to her advantage in ways that may cause Plaintiffs to have to expend significant money and resources to defend themselves.

112. As a direct and proximate result of Defendant's actions, Plaintiffs have been and continues to be damaged and are therefore entitled to compensatory damages in an amount to be determined at trial.

113. Defendant's wrongful actions were willful and deliberate. Accordingly, an award of punitive damages is warranted and would serve to deter Defendant and others from engaging in such conduct.

### COUNT VII
### (Unjust Enrichment)

114. Plaintiffs incorporate by reference each of the foregoing paragraphs of their Complaint as if the same were set forth fully herein.

115. Following the termination of her employment, Defendant received unearned wages in the amount of $28,889.02, which she has failed to return following a demand by Plaintiffs.

116. Defendant has been unjustly enriched at Plaintiffs' expense by unlawfully retaining the $28,889.02 in unearned wages.

117. Plaintiffs thus seek reimbursement of the sum of $28,889.02, plus interest.

### DEMAND FOR TRIAL BY JURY

Plaintiffs request that a jury trial be held in this matter as to all claims asserted.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully seek an order:

a. Awarding Plaintiffs compensatory damages in an amount to be determined at trial on Counts I through VII;

b. Awarding Plaintiffs punitive damages in an amount to be determined at trial on Counts II, III, V and VII;

c. Directing Plaintiffs to reimburse Defendant for all compensation earned following her breach of her duty of loyalty;

d. Directing that $28,889.02 be returned by Defendant to Plaintiffs plus any interest that has occurred since Defendant unlawfully retained the unearned wages;

e. Enjoining and permanently restraining Plaintiffs from accessing, procuring or using Plaintiffs' Confidential Information, and from using Richemont's company-owned telephone number;

f. Directing Plaintiffs to return and/or destroy any of Plaintiffs' Confidential Information in her possession, custody or control;

g. Awarding Plaintiffs reasonable attorneys' fees and costs incurred in connection with this action;

h. Awarding Plaintiffs pre- and post-judgment interest; and

i. Awarding Plaintiffs such other relief as the Court deems just and proper.

MORGAN LEWIS & BOCKIUS LLP

Dated: July 7, 2014

By: _____
Christopher A. Parlo (CP-4310)
Brendan T. Killeen (BK-2560)

101 Park Avenue
New York, NY 10178

Telephone: 212.309.6000
Facsimile: 212.309.6001

Attorneys for Plaintiffs